IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

KYMM M. EHLER,

    Plaintiff,

vs.

WHEATON FRANCISCAN
MEDICAL PLAN, COVENANT
MEDICAL CENTER, INC., and
WHEATON FRANCISCAN
SERVICES, INC.,

    Defendants.

No. C08-2021

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

*I. INTRODUCTION* .................................................. 2

*II. FACTUAL BACKGROUND & PROCEEDINGS* ......................... 2
    *A. Ehler's Illness and Treatment.* ............................... 2
    *B. Ehler's Administrative Appeals.* ............................. 4
    *C. The Lawsuit.* ................................................ 6

*III. RELEVANT PLAN PROVISIONS* ..................................... 8
    *A. Non-Covered Services.* ....................................... 8
    *B. "Medically Necessary".* ....................................... 8
    *C. "Experimental or Investigational".* ........................... 9

*IV. STANDARD OF REVIEW* .......................................... 10

*V. ANALYSIS* ...................................................... 13
    *A. The Parties' Arguments.* ..................................... 13
    *B. Discussion.* ................................................. 14

*VI. RECOMMENDATION.* ............................................. 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint and Jury Demand (docket number 1) filed by Plaintiff Kymm M. Ehler on April 9, 2008, seeking recovery of health benefits from Defendant Wheaton Franciscan Medical Plan ("the Plan"), part of an employee welfare benefit plan sponsored by Ehler's employer, Defendant Covenant Medical Center, Inc., and administered by Defendant Wheaton Franciscan Services, Inc. Ehler requests payment of health benefits allegedly due to her under the Plan. Defendants deny that she is entitled to benefits under the Plan. The matter has been referred to the undersigned magistrate judge for a report and recommendation.

## II. FACTUAL BACKGROUND & PROCEEDINGS

### A. Ehler's Illness and Treatment

In December 2006, Ehler was diagnosed with breast cancer. On December 27, 2006, she underwent a right-side mastectomy. She underwent a left-side mastectomy on January 15, 2007. A CT scan in January 2007 also revealed multiple liver metastases. On February 9, 2007, Ehler started six months of chemotherapy. At the end of her six-month chemotherapy cycle, Ehler's condition had improved, but one metastatic lesion remained on her liver.[1]

In July 2007, Ehler was referred to the University of Iowa Hospitals and Clinics ("UIHC") for further consultation. At the UIHC, Ehler met with Dr. Daniel A. Katz, M.D. Dr. Katz recommended radiofrequency ablation ("RFA") of the remaining lesion on Ehler's liver and intraoperative ultrasound, liver biopsy, and cholecystectomy consequential to RFA as treatment. The procedures recommended by Dr. Katz were scheduled for July 20, 2007. On July 19, 2007, Ehler sought pre-service authorization as required by the Plan.

---

[1] The remaining lesion had decreased in size from 2.5 cm to 1.0 cm with the chemotherapy.

2

On July 20, 2007, prior to receiving pre-service authorization, Ehler underwent the RFA, cholecystectomy, intraoperative ultrasound, and liver biopsy procedures. The procedures were performed by Dr. Katz at the UIHC. Approximately three hours after the surgery commenced, Ehler's request for pre-service authorization was verbally denied by Claims Management Services ("CMS").[2] Specifically, CMS determined that "RFA is not known to be an effective long-term treatment of liver met[astasis secondary to] breast [cancer]. All of the proposed surgical treatment would be experimental [and] is not med[ically] necess[ary]."[3] CMS further explained its decision in a letter dated July 26, 2007:

> Based on this review, it has been determined that the radiofrequency ablation, cholecystectomy and intraoperative ultrasound are not eligible for benefits. Radiofrequency ablation is not known to be an effective long term treatment for your condition. All of the aforementioned procedures would be considered experimental and are not medically necessary. In addition, any services that are related to or are a result/consequence of this treatment are not eligible for benefits as the Plan specifically excludes treatment/services that are related to non-covered treatment.

(Defendants' Appendix at 44.)

---

[2] CMS is a third party administrator that handles initial claims made under the Plan. Specifically, the Plan provides the following explanation for its Claim Administration and Appeal Procedure:
> The First Level of Appeals will be determined by Claims Management Services or Caremark, as a named fiduciary of the Plan. The Plan Sponsor (or its designee) will have the sole discretion to make the determination of all final appeals (the Second Level of Appeals). The Plan Sponsor's designee for the purpose of deciding appeals at the Second Level of Appeals is the Wheaton Franciscan Medical Plan Appeals Committee.

See Defendants' Appendix at 236.

[3] See Defendants' Appendix at 015.

3

## B. Ehler's Administrative Appeals

On August 14, 2007, Ehler submitted a first level appeal of CMS's decision to deny her benefits for the surgical procedures performed by Dr. Katz on July 20, 2007.[4] In evaluating Ehler's first level appeal, CMS obtained and considered a physician peer review opinion from the Medical Review Institute of America, Inc. ("MRIA").[5] CMS's "Questions for Review" for the physician peer reviewer included:

> 1. Based on the information provided, would this surgical approach be considered experimental as Plan defined?
> . . .
>
> 2. Based on the information provided, would this surgical approach be considered medically necessary as Plan defined? . . .

(Defendants' Appendix at 016.) The physician peer reviewer opined that:

> Based on the information provided, this surgical approach would be considered experimental as plan defined. The treatment is marketed as a technical procedure, but not for the indication in question, and not for breast cancer. . . . There is expert consensus that more studies are necessary for the procedure in general and its application in breast cancer in particular. . . .
>
> Based on the information provided, this surgical approach would not be considered medically necessary as plan defined. The role of RFA for breast cancer liver mets is not supported by credible medical literature. The requested treatment is not appropriate under the standards of acceptable medical practice to treat that illness or injury. The requested treatment is not solely for the convenience of the covered person, physician,

---

[4] *See* Defendants' Appendix at 049-050.

[5] The Medical Review Institute of America, Inc. provides "external physician review to assist in the benefits administration process for organizations across the country." *See* http://www.mrioa.com/about.asp According to their website, "MRIoA's mission is to provide balanced, well-supported, expert medical review services to ensure clinically appropriate healthcare coverage determination." *Id.*

> hospital, or other health care provider. The requested
> treatment is not the most appropriate service, treatment,
> procedure, equipment, drug, device or supply which can be
> safely provided to the covered person and accomplishes the
> desired [] result in the most economical manner.

(Defendants' Appendix at 017-018.) Based on the physician peer reviewer's opinions, CMS denied Ehler's first level appeal because the surgical procedures performed by Dr. Katz were "considered to be experimental in nature and not medically necessary as Plan defined."[6]

On October 18, 2007, Ehler submitted a second level appeal of the denial of benefits for the surgical procedures performed by Dr. Katz on July 20, 2007.[7] In evaluating Ehler's second level appeal, the Wheaton Franciscan Medical Plan Appeals Committee ("Appeals Committee") obtained and considered two additional physician peer review opinions from the MRIA. Similarly to CMS, the Committee requested that the physician peer reviewers provide opinions regarding whether Ehler's surgical procedures were experimental and/or medically necessary as defined by the Plan.

The first physician peer reviewer provided the following pertinent opinions:

> RFA is considered experimental/investigational because it is
> the subject of ongoing trials to determine its exact role and
> further trials are thought to be necessary. It is FDA-approved
> as a useful technique, but not necessarily for metastatic breast
> cancer. It requires further studies to determine its
> efficacy. . . .
>
> It is not medically necessary because although consistent with
> the diagnosis and not performed for convenience, it is not
> known to be the most appropriate treatment given in the most
> economical manner.

(Defendants' Appendix at 025.) The second physician peer reviewer opined that:

---

[6] *See* Defendants' Appendix at 053; *see generally* Defendants' Appendix at 053-057.

[7] *Id.* at 076.

> Based on information provided, RFA would be considered
> experimental as plan defined for treatment of primary breast
> cancer with liver metastasis. The liver is involved in over
> one-half of patients with metastatic breast cancer. However,
> in contrast to colorectal cancer, liver metastases are usually a
> late development, and generally considered to represent
> disseminated disease with a poorer prognosis than bone or soft
> tissue metastases. Only 5 to 12 percent of cases have isolated
> liver involvement. . . .
>
> Based on information provided, RFA would be considered not
> medically necessary as plan defined for treatment of primary
> breast cancer with liver metastasis. For appropriately selected
> patients, surgical treatment of breast cancer metastases that are
> limited to the liver may prolong survival to a greater extent
> than standard nonsurgical therapies. In retrospective series, 5
> year survival rates for resectable [sic] patients range from 18
> to 59 percent. Many of these patients also receive systemic
> chemotherapy, although its contribution to long-term outcomes
> is unclear.

(Defendants' Appendix at 029.) After considering the opinions of the MRIA physician peer reviewers and all of the other information submitted for review, the Committee determined that it was "unable to authorize benefits for the procedure because the procedure is considered experimental in nature and not medically necessary, as Plan defined, and is not eligible for Plan benefits."[8]

### C. The Lawsuit

On April 9, 2008, Ehler filed a Complaint and Jury Demand (docket number 1) alleging a claim under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B)[9] to recover benefits (Count I), breach of written contract (Count

---

[8] *See* Defendants' Appendix at 001; *see generally* Defendants' Appendix at 001-005.

[9] 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part:
   A civil action may be brought--
      (1) by a participant or beneficiary--

(continued...)

II), breach of oral or implied contract (Count III), and promissory estoppel (Count IV). On June 30, 2008, Defendants filed an Answer (docket number 3). On January 16, 2009, Defendants filed a motion for summary judgment (docket number 17). On January 29, 2009, Ehler filed a "Motion for Leave of Court to File Voluntary Dismissal with Prejudice of Counts II through IV of Complaint" (docket number 21). On February 2, 2009, the district court granted Ehler's motion and dismissed Counts II through IV of her Complaint. *See*, Order (docket number 24). On February 7, 2009, Defendants filed a "Motion to Strike Jury Demand and Remove Case from Trial Calendar" (docket number 26). On March 4, 2009, the district court granted Defendants' motion and denied Defendants' motion for summary judgment as moot. *See*, Order (docket number 44).

On April 7, 2009, Ehler filed "Plaintiff's Opening Brief on Review of Denial of ERISA Benefits [29 U.S.C. § 1132(a)(1)(B)]" (docket number 49). Attached to Ehler's Brief was "Plaintiff's Appendix of Exhibits in Support of Opening Brief on Review of Denial of ERISA Benefits" (docket number 49-2). On April 14, 2009, Defendants filed a Motion to Strike (docket number 51) requesting that the Court strike Ehler's Appendix of Exhibits in Support of Opening Brief on Review of Denial of ERISA Benefits. On April 16, 2009, Defendants filed their brief on Ehler's ERISA claim (docket number 55). On April 22, 2009, the Court granted Defendants' Motion to Strike and ordered that "[t]he Appendix (docket number 49-2) filed with Ehler's trial brief will not be considered by the Court as part of its review."[10] On April 28, 2009, Chief Judge Linda R. Reade referred

---

[9](...continued)
> (B) to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan.

[10] *See* Ruling on Motion to Strike (docket number 56) at 8.

this matter to a Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. RELEVANT PLAN PROVISIONS

#### A. Non-Covered Services

The Plan does not pay for services which are not medically necessary, or which are experimental or investigational in nature. Limitations and exclusions for health benefits under the Plan are set forth as follows:

> The following charges are not covered by the Plan. No medical benefits will be paid with respect to the following charges, except as specified:
>
> . . .
>
> 12. charges for services not Medically Necessary for diagnosis and treatment of an illness or injury;
>
> 13. services, supplies, human organ and tissue transplants, prescription drugs or medications which are Experimental or Investigational; . . .

(Defendants' Appendix at 194.)

#### B. "Medically Necessary"

The Plan defines the term "medically necessary" as follows:

> "MEDICALLY NECESSARY" means that a service, treatment, procedure, equipment, drug, device or supply provided by a Hospital, Physician or other health care provider is required to diagnose or treat a Covered Person's Illness or Injury and which is, as determined by the Plan Administrator to be:
>
> 1. consistent with the symptoms or diagnosis and treatment of the Covered Person's Illness or Injury;
>
> 2. appropriate under the standards of acceptable medical practice to treat that Illness or Injury;

8

3. not solely for the convenience of the Covered Person, Physician, Hospital or other health care provider; and

4. the most appropriate service, treatment, procedure, equipment, drug, device or supply which can be safely provided to the Covered Person and accomplishes the desired end result in the most economical manner.

However, the fact that a provider may prescribe, order, recommend or approve a service, treatment, procedure, equipment, drug, device or supply does not, of itself, make that service, treatment, procedure, equipment, drug, device or supply Medically Necessary.

(Defendants' Appendix at 156.)

### C. *"Experimental or Investigational"*

The Plan defines the term "experimental or investigational" as follows:

**"EXPERIMENTAL OR INVESTIGATIONAL"** means any treatments, procedures, devices, drugs or medicines for which one or more of the following is true:

. . .

2. reliable evidence shows that the treatment, procedure, device, drug or medicine is the subject of ongoing phase I, II, or III clinical trial(s) or under study to determine its maximum tolerated dose, toxicity, safety, efficacy, or efficacy as compared with the standard means of treatment or diagnosis;

3. reliable evidence shows that the consensus of opinion among experts regarding the treatment, procedure, device, drug or medicine is that further studies or clinical trials are necessary to determine its maximum tolerated dose, toxicity, safety, efficacy or efficacy as compared with standard means of treatment or diagnosis.

> Reliable evidence means only published reports and articles in the authoritative medical and scientific literature; the written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same treatment, procedure, device, drug or medicine; or the written informed consent used by the treating facility or by another facility studying substantially the same treatment, procedure, device, drug or medicine.
>
> Experimental or Investigational shall also mean: (a) any treatments, services or supplies that are educational or provided primarily for research; or (b) treatments, procedures, devices, drugs or medicines or other expense relating to transplants of non-human organs, tissues, or cells.

(Defendants' Appendix at 154-55.)

## IV. STANDARD OF REVIEW

"'ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.'" *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)). Review of plan determinations is *de novo*, unless the plan provides discretionary authority to the plan administrator "'to determine eligibility for benefits or to construe the terms of the plan.'" *Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In this case, the Plan Administrator is given discretion to determine eligibility for plan benefits and interpret the plan's terms.[11] When a plan

---

[11] *See* Defendants' Appendix at 236 ("The Plan Administrator has the complete and sole discretionary authority to determine all questions arising in connection with the administration, interpretation, and application of the Plan (and any related documents and underlying policies). Any such determination by the Plan Administrator shall be conclusive and binding upon all persons."); *see also id.* at 239 ("The Plan Administrator shall have full and discretionary authority to interpret and apply and construe all the Plan provisions, including, but not limited to, all factual issues and all issues concerning eligibility for and determination of benefits.").

administrator is given such discretion, the court must review a decision by the administrator for abuse of discretion. *Shelton*, 285 F.3d at 642. "'This deferential standard reflects [the] general hesitancy to interfere with the administration of a benefits plan.'" *Id.* (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). In *Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489 (8th Cir. 2005), the Eighth Circuit Court of Appeals described this standard of review as follows:

> Because the plan gives [the plan administrator] discretion to determine eligibility, we review the administrator's decision for abuse of discretion. Under this standard of review, we consider whether the administrator adopted a "reasonable interpretation" of uncertain terms in the plan, and whether the administrator's decision was supported by substantial evidence.

*Id.* at 490 (citations omitted). When the abuse of discretion standard is applied, the reviewing court "must affirm if a 'reasonable person could have reached a similar decision, given the evidence before him [or her], not that a reasonable person would have reached that decision.'" *Smith v. Unum Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). A reasonable decision is a decision which is based on substantial evidence that was before the plan administrator. *Id.* Substantial evidence is evidence which a reasonable mind could accept as adequate to support a conclusion. *Johnson*, 424 F.3d at 738.

"When reviewing a denial of benefits by an administrator who has discretion[,] . . . a reviewing court, 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" *King v. Hartford Life and Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999)). Furthermore,

> an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation

> of the plan and substantial evidence in the materials considered by the administrator.

*King*, 414 F.3d at 1000.

Recently, the United States Supreme Court determined that a conflict of interest is created when the administrator of a benefit plan both determines whether an employee is eligible for benefits and then pays the benefits. *Metro. Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2346 (2008). The United States Supreme Court further determined that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Id.* (citing *Bruch*, 489 U.S. at 115). In discussing *Glenn*, the Eighth Circuit Court of Appeals noted that

> the existence of a conflict did not lead the [United States Supreme] Court to announce a change in the standard of review. We are to review an administrator's discretionary benefit determination for abuse of discretion. The [United States Supreme] Court concluded that 'a conflict should be weighed as a factor in determining whether there is an abuse of discretion.'

*Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 581 (8th Cir. 2008) (citation and quotation omitted).

In summary, if the question before the Court is whether the plan administrator abused its discretion, then the Court

> will not disturb the administrator's decision if it was reasonable. We measure reasonableness by whether substantial evidence exists to support the decision, meaning 'more than a scintilla but less than a preponderance.' *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998). We examine only the evidence that was before the administrator when the decision was made, and we are to determine whether a reasonable person could have -- not would have -- reached a

similar decision. *Phillips-Foster v. UNUM Life Ins. Co.*, 302 F.3d 785, 794 (8th Cir. 2002).

*Wakkinen*, 531 F.3d at 583.

## V. ANALYSIS

### A. The Parties' Arguments

Ehler argues that the Plan Administrator's decision to deny her health benefits was "arbitrary and capricious given the plan language and evidence available."[12] Specifically, Ehler maintains that the Plan Administrator's "paid reviewers apparently ignored a wealth of published medical literature available to them during the time that Ms. Ehler's claim was being considered."[13] Moreover, Ehler argues that:

> If the [P]lan [A]dministrator had made a comprehensive review of the medical literature on the use of radiofrequency ablation in treatment for metastatic breast cancer, such as is presented in plaintiff's appendix, the plan administrator would have been hard pressed to deny the recognized efficacy of this treatment modality. Failure to do so was arbitrary and capricious.

(*See* Ehler's Brief at 5.)

Defendants argue that the administrative record contains substantial evidence to support the Plan Administrator's conclusion that radiofrequency ablation of breast cancer metastases to the liver is both experimental and not medically necessary under the terms of the Plan. In making its determination, the Plan Administrator relied primarily on the opinions of three independent peer physician reviewers and a large sampling of medical literature relating to RFA procedures for liver metastases in breast cancer patients.[14]

---

[12] *See* Ehler's Brief at 2.

[13] *Id.* at 5.

[14] *See* Defendants' Appendix at 003-004 (list of physician opinions and medical literature considered); *see also id.* at 374-427; 434-85; 497-646 (copies of all the medical literature that the three physician peer reviewers relied on to support their opinions).

## B. Discussion

At the outset, the Court reminds Ehler that "[w]hen reviewing a denial of benefits by an administrator who has discretion[,] . . . a reviewing court, 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" *King*, 414 F.3d at 999 (quotation omitted). Moreover, Ehler's Appendix which was attached to her brief was stricken from consideration by the Court as part of its review of the Plan Administrator's decision.[15] Accordingly, the Court will not consider any of the information in Ehler's Appendix and will only consider the Administrative Record when reviewing the Plan Administrator's decision to deny Ehler benefits.

Turning to the administrative record, the Court will review the opinions of the three physician peer reviewers upon whom the Plan Administrator relied heavily to deny payment of Ehler's treatment as experimental and not medically necessary. The first physician peer reviewer opined that:

> The goal of RFA is local control and prevention of farther spread. Breast cancer is different than colon cancer in its patterns of spread and natural history. There are no large studies describing the ultimate effect of RFA on these factors in breast cancer. Therefore, it should be considered experimental at this time, especially after chemotherapy. . . .
>
> Based on the information provided, this surgical approach would be considered experimental as plan defined. The treatment is marketed as a technical procedure, but not for the indication in question, and not for breast cancer. . . . There is expert consensus that more studies are necessary for the procedure in general and its application in breast cancer in particular. . . .
>
> Based on the information provided, this surgical approach would not be considered medically necessary as plan defined.

---

[15] *See* Ruling on Motion to Strike (docket number 56) at 8.

14

> The role of RFA for breast cancer liver mets is not supported by credible medical literature. The requested treatment is not appropriate under the standards of acceptable medical practice to treat that illness or injury. The requested treatment is not solely for the convenience of the covered person, physician, hospital, or other health care provider. The requested treatment is not the most appropriate service, treatment, procedure, equipment, drug, device or supply which can be safely provided to the covered person and accomplishes the desired [] result in the most economical manner.

(Defendants' Appendix at 017-018.) The first physician peer reviewer also noted that the procedure under question was in phase II studies.[16]

The second physician peer reviewer opined that:

> In addition to primary liver tumors, the technique of radiofrequency ablation has been approved in metastatic lesions from colorectal cancer or neuroendocrine cancer. Bleicher et al. (2003) reported the use of RFA in a variety of metastatic tumors on the liver, including from breast primary. However, most of the primary cancer was colorectal and the number of breast tumors was very small. It is thought that further trials need to be performed with breast primaries. NCI trial 00019604 is such a trial (Phase II) that is recruiting patients with metastatic lesions to the liver. . . .
>
> RFA is considered experimental/investigational because it is the subject of ongoing trials to determine its exact role and further trials are thought to be necessary. It is FDA-approved as a useful technique, but not necessarily for metastatic breast cancer. It requires further studies to determine its efficacy. . . .
>
> It is not medically necessary because although consistent with the diagnosis and not performed for convenience, it is not

---

[16] See Defendants' Appendix at 021; see also id. at 154-55 (definition of "Experimental or Investigational" as any treatments or procedures where reliable evidence shows that the treatment or procedure is the subject of ongoing phase I, II, or III clinical trial).

> known to be the most appropriate treatment given in the most economical manner.

(Defendants' Appendix at 025.)

The third physician peer reviewer opined that:

> Based on information provided, RFA would be considered experimental as plan defined for treatment of primary breast cancer with liver metastasis. The liver is involved in over one-half of patients with metastatic breast cancer. However, in contrast to colorectal cancer, liver metastases are usually a late development, and generally considered to represent disseminated disease with a poorer prognosis than bone or soft tissue metastases. Only 5 to 12 percent of cases have isolated liver involvement. . . .
>
> Based on information provided, RFA would be considered not medically necessary as plan defined for treatment of primary breast cancer with liver metastasis. For appropriately selected patients, surgical treatment of breast cancer metastases that are limited to the liver may prolong survival to a greater extent than standard nonsurgical therapies. In retrospective series, 5 year survival rates for resectable patients range from 18 to 59 percent. Many of these patients also receive systemic chemotherapy, although its contribution to long-term outcomes is unclear.

(Defendants' Appendix at 029.)

Applying an abuse of discretion standard, the Court finds that the Plan Administrator's decision is a reasonable interpretation of the Plan provisions and is supported by substantial evidence in the record. *See Hunt*, 425 F.3d at 490; *see also Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008) ("'When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, it should not be disturbed.' *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007)."). The Plan Administrator properly articulated its reasons for denying health benefits to Ehler, fully explained its reasons for finding that her RFA procedure was both experimental and not medically necessary under the terms of the Plan,

and supported its decision with substantial evidence in the administrative record, in particular the opinions of three independent peer review physicians. *See King*, 414 F.3d at 1000. Furthermore, the conflict of interest factor discussed in *Glenn* does not compel a different result, because the Plan Administrator's denial of health benefits was reasonably based on the Plan provisions and the evidence in the record. Accordingly, the Court finds that the Plan Administrator's decision to deny health benefits should be upheld because a reasonable person could have reached a similar decision. *See Wakkinen*, 531 F.3d at 583; *see also Jackson*, 530 F.3d at 701 ("'[T]he discretionary decision of a plan administrator is not unreasonable merely because a different, reasonable interpretation could have been made.'") (quotation omitted); *Smith*, 305 F.3d at 794 (the reviewing court "must affirm if a 'reasonable person could have reached a similar decision, given the evidence before him [or her], not that a reasonable person would have reached that decision.'") (quotation omitted).

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **AFFIRM** the Plan Administrator's decision to deny benefits.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.

DATED this 23rd day of June, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA